IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DENNIS MULLALY,        )<br>                              )<br>         Plaintiff,        )<br>                              )         CV 06-6076-CL<br>   v.                        )<br>                              )         REPORT AND<br>MICHAEL J. ASTRUE, Commissioner of Social  )   RECOMMENDATION<br>Security,                   )<br>                              )<br>         Defendant.       ) | |

CLARKE, Magistrate Judge:

## INTRODUCTION

Plaintiff Dennis J. Mullaly brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act.

1 - REPORT AND RECOMMENDATION

The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©)(3). The Commissioner's decision should be affirmed.

## BACKGROUND

Mullaly was born March 3, 1943. He completed high school and reported earning a Bachelor of Science degree in computer science. Tr. 88, 220.[1] He reported working in the computer field for nearly 34 years, from 1963 until April 1997. Tr. 83. He worked as a cab driver from 1997 to 1999. Tr. 83, 112. Mullaly was incarcerated from September 1999 until February 2002. Tr. 395. He worked again as a cab driver from June to November 2002. Tr. 396. He then worked as a warehouse worker from November 2002 until August 2004. Tr. 393-95.

Mullaly alleges disability beginning April 30, 1996, due to pain in the neck and low back, depression, anxiety and post traumatic stress disorder (PTSD). Tr. 82.

Mullaly had insured status under the Social Security Act through December 31, 2003. He must establish that he was disabled on or before that date to prevail on his Title II claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - REPORT AND RECOMMENDATION

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R §§ 404.1520, 416.920. Mullaly challenges the ALJ's evaluation of the evidence and conclusions at steps one and four of the sequential process.

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in substantial gainful activity is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

The ALJ found that Mullaly's employment as a taxicab driver during 1997 and 2002 and as a delivery person and warehouse worker in 2003 met the regulatory definition of substantial gainful activity. Accordingly, he found Mullaly not disabled during those periods of employment. Tr. 20.

For the purposes of step four, the Commissioner must first assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p. Here the ALJ assessed Mullaly's RFC as follows:

> The claimant has spine impairments that limit him to lift up to twenty pounds frequently, ten pounds occasionally without further limitation, except that he must avoid climbing ladders, ropes or scaffolds and stoop only occasionally.

Tr. 22.

At step four, the Commissioner must determine whether the claimant's RFC leaves him able to perform work he has done in the past. If the ALJ determines that the claimant retains the ability

3 - REPORT AND RECOMMENDATION

to perform his past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Here the ALJ relied on the testimony of a vocational expert (VE) who said that a hypothetical individual with Mullaly's RFC could perform the demands of work as a computer programmer as that occupation is generally performed in the national economy. The ALJ concluded that Mullaly could perform his past relevant work as a computer programmer and that Mullaly is not disabled within the meaning of the Social Security Act. Tr. 25-26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1039-1040.

**DISCUSSION**

Mullaly contends the ALJ erroneously calculated his earnings in determining that he engaged in substantial gainful activity during parts of the relevant period. He contends the ALJ failed to accurately assess his RFC by failing to give adequate weight to the opinion of a treating physician and improperly disregarding the testimony of a lay witness. Mullaly contends this evidence, if properly credited, compels a finding of disability.

### I.      Substantial Gainful Activity

The ALJ found that Mullaly had monthly earnings in 1997 and 2003 in excess of the regulatory presumptive level for substantial gainful activity. The Commissioner concedes that the ALJ reached this determination by erroneously interpreting Mullaly's testimony regarding the number of months he worked during 1997 and 2003.

Accordingly, the ALJ's determination that Mullaly was intermittently engaged in substantial gainful activity during the relevant period is not supported by substantial evidence and cannot be upheld.

### II.      RFC Assessment

Mullaly challenges the ALJ's evaluation of the evidence supporting his RFC assessment. Mullaly contends the ALJ improperly discounted the opinion of Norman Bass, M.D., and failed to consider the statements of two lay witnesses.

#### A.      Dr. Bass's Opinion

Mullaly was healthy and able to enjoy a full range of activities before suffering a hyperextension injury of the neck in a rear-end motor vehicle collision on April 30, 1996. He visited

a hospital emergency room on May 4, 1996, due to continuing right-sided neck and shoulder pain and muscle spasm. A CT scan of the brain was normal. Tr. 216.

Dr. Bass performed a neurology consultation on May 8, 1996. His neurological findings were generally benign. Dr. Bass diagnosed right-sided radiculoneuropathy with paracervical muscle spasm which he treated with muscle relaxants and a cervical collar. Tr. 216-17.

Mullaly did not require care from Dr. Bass for nearly three months. When he returned on August 30, 1996, Dr. Bass found that his prior neurological signs had resolved. Mullaly complained of new symptoms, *viz.* left-sided neck stiffness and right hip pain radiating to his knee and ankle when driving. He had minimal spasm in the neck muscles and no paralumbar muscle spasm to suggest radiculopathy. He had no muscle wasting or reflex changes in his lower extremities. Dr. Bass found no evidence of dysfunction relating to any organ system. Tr. 214.

Mullaly saw Dr. Bass for a one-month follow-up on September 20, 1996. Mullaly complained of right-sided low back pain. X-ray images of the lumbar spine showed the disc spaces well maintained. Tr. 150. Dr. Bass did not record any abnormalities on a neurological examination. He suspected Mullaly's reported low back pain could be radiculopathy from a bulging disc, but admitted that a disc bulge could only be detected with an MRI scan. He again noted that Mullaly's neck injury had resolved. Tr. 212-13.

On October 18, 1996, Mullaly complained of left-sided neck pain and right-sided sciatic pain, exacerbated by driving 126 miles per day. Dr. Bass found paracervical muscle spasm on the left and low back pain on the right. Dr. Bass noted "chronic right L5-S1 radiculopathy secondary to bulging disc caused by motor vehicle accident" and "chronic left C4-5 radiculopathy secondary to bulging

disc exacerbated by motor vehicle accident." Tr. 210. There is no record that he obtained an MRI scan before making this diagnosis. Dr. Bass did not examine Mullaly again for over a year.

Meanwhile, on October 27, 1996, an MRI of the lumbar spine showed normal disc spaces and produced no evidence of significant distortion of the spinal sac or nerve roots. There were some degenerative changes causing a very mild degree of stenosis without evidence of nerve involvement. Tr. 149-50. On December 4, 1997, an MRI of the cervical spine showed degenerative arthritis and disc disease with a disc bulge at the C5-6 level causing moderate impingement of the thecal sac, spinal cord and nerve roots in that area. Tr. 146.

Although he had not examined Mullaly in over seven months, Dr. Bass wrote a letter dated June 20, 1997, to Mullaly's attorney in support of his disability claim. He opined that the motor vehicle accident of the preceding April left Mullaly partially disabled, reducing his full body functioning by 30%, from cervical disc disease with derangement of spinal nerve roots producing chronic cervical pain and persistent visual impairment of the right eye. Tr. 208-09.

On November 19, 1997, Dr. Bass examined Mullaly for complaints of short term memory loss and poor concentration dating from the motor vehicle accident of April 1996. Mullaly had recently lost his job as a senior program analyst. His general neurological examination was unchanged. He had chronic low back pain with radiculopathy, chronic neck pain and depression. Dr. Bass referred Mullaly to a psychologist for counseling, but Mullaly did not pursue this recommendation. Tr. 206-07.

On June 3, 1998, Mullaly had a follow-up examination by Dr. Bass for lumbar radiculopathy. Mullaly complained of lower back pain and limited range of motion in the neck. He had depression associated with the recent loss of his job as a taxi driver and separation from his wife. Tr. 206.

On November 6, 1998, Mullaly saw Dr. Bass for a follow-up, complaining of intermittent pain in the right knee and thigh ongoing since the motor vehicle accident in April 1996. He admitted excessive alcohol consumption. He did not appear depressed. He was out of work, but hoped to be hired as a truck driver. He continued to have neck and back pain. He said he could sustain work at a desk for an hour at a time and could drive for four hours per day with frequent stops to stretch and rest. Tr. 204. Dr. Bass observed no atrophy of Mullaly's musculature.

Dr. Bass opined that Mullaly needed 15 minutes of rest after one hour of sitting, standing or walking and that Mullaly should not lift more than 20 pounds. Tr. 205. The ALJ gave little weight to Dr. Bass's opinion regarding the need for hourly rest breaks, but apparently accepted the lifting limitation of 20 pounds. Tr. 22-23.

Generally, a treating physician's opinion is given great weight in disability cases. *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993). Such an opinion can be controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ pointed out that Dr. Bass's opinion was not supported by objective or clinical findings. As described above, in his initial consultation, Dr. Bass made limited neurological findings such as paracervical muscle spasms. Mullaly did not seek further care for three months, at which time the prior neurological signs had resolved. Mullaly had minimal residual spasm in the neck

8 - REPORT AND RECOMMENDATION

muscles and no spasm, muscle wasting or reflex changes in the lower extremities. Diagnostic imaging did not support symptoms radiating from the low back. MRI scans supported only moderate nerve impingement in the cervical spine.

The ALJ noted that Dr. Bass treated Mullaly conservatively. He treated Mullaly's acute injuries with muscle relaxants and a cervical collar. His later treatment consisted of recommendations for stretching, exercise, sleep and use of an automatic transmission, and increasing Mullaly's antidepressant medication for situational depression associated with a job loss and separation from his wife.

The ALJ noted that Dr. Bass treated Mullaly infrequently. He saw Mullaly shortly after his accident, but then Mullaly did not require treatment for three months. After three monthly appointments, he did not return for over a year. Then he returned for three visits at six-month intervals. The ALJ could reasonably believe that a person experiencing debilitating neurological symptoms would pursue more aggressive and more frequent treatment than shown by Dr. Bass's treatment history.

Significantly, Dr. Bass did not perform a physical capacity examination or state a medical basis for his opinion that Mullaly required rest for 15 minutes every hour. The ALJ could reasonably conclude from this treatment history that Dr. Bass relied primarily on Mullaly's subjective description of his symptoms, rather than objective or clinical findings, in arriving at his opinion. An ALJ can properly reject a physician's disability opinion that is premised on the claimant's own subjective complaint of disabling symptoms which the ALJ has properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

9 - REPORT AND RECOMMENDATION

Notably, Mullaly does not challenge the ALJ's determination that his subjective statements were not fully credible. Tr. 24.

The ALJ chose to give greater weight to the opinion of William Bernstein, M.D., Ph.D., in assessing Mullaly's functional limitations from spine impairments. Dr. Bernstein performed a consultative neurological examination in June 2002. He reviewed Mullaly's medical records from Dr. Bass and others, including diagnostic images. On examination, Dr. Bernstein could not find any sign of spinal cord or nerve root compression, and diagnosed only "diffuse cervical, lumbar, and somatic osteoarthritis, [which] is fairly mild." Tr. 326. Dr. Bernstein did not find limitations in muscle tone, bulk or strength, coordination and gait, reflexes or sensory responses. He did not identify any functional limitations.

The ALJ also relied on the findings of Charles Spray, M.D. and Martin Kehrli, M.D. Drs. Spray and Kehrli are medical experts who reviewed Mullaly's treatment records but did not examine him. The Commissioner relies on such medical consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p.

Dr. Spray reviewed Mullaly's medical records from the entire period for which he claims disability. Based on the full medical record, Dr. Spray assessed Mullaly's functional limitations as follows: he could lift up to 20 pounds occasionally and 10 pounds frequently; he could stand, walk or sit for up to 6 hours of an 8-hour day with normal breaks; he could not climb ladders, ropes or scaffolds and could stoop only occasionally. Dr. Kehrli reviewed the full medical record and affirmed Dr. Spray's findings.

The findings of Drs. Spray and Kehrli are consistent with the medical evidence and the record as a whole. The only contradictory evidence is Dr. Bass's opinion that Mullaly requires hourly rest breaks. This opinion, in turn was based primarily on Mullaly's subjective statements which the ALJ found not credible.

The ALJ provided specific, legitimate reasons for rejecting Dr. Bass's opinion in favor of the contrary opinions of Drs. Bernstein, Spray and Kehrli. The findings of Drs. Bernstein, Spray and Kehrli are supported by the medical evidence and the record as a whole. These sources had greater information covering the entire period for which Mullaly claims disability. The ALJ could reasonably conclude that they provide a more accurate assessment of Mullaly's functional capacity than the opinion of Dr. Bass. Accordingly, the court should uphold the ALJ's reasonable interpretation of the evidence. *Andrews v. Shalala*, 53 F.3d at 1039-1040.

### B. Lay Witness Statements

Mullaly contends the ALJ erred in evaluating his functional limitations by disregarding the testimony of his co-worker, James Ruckdashel, and discounting the written statement of his roommate, JoAnn Shaw. Family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

Ruckdashel worked with Mullaly for two to three years as a warehouseman and truck driver at a hospice distribution center. They performed two-man jobs, picking up and delivering donations

11 - REPORT AND RECOMMENDATION

of furniture and boxes of other items. The job consisted of packing, lifting, hauling and carrying boxes and furniture. It was very physical work, involving lifting and carrying weights up to 70 pounds. Mullaly was one of the best men Ruckdashel had worked with for performing these tasks until around the middle of 2003 when his ability to lift and carry and keep his balance began to deteriorate fairly quickly. Mullaly appeared to be in pain and began to miss work fairly regularly. He fell numerous times. Tr. 414-17.

The ALJ considered Ruckdashel's testimony and apparently accepted most of it. To the extent Ruckdashel's testimony showed that Mullaly could not regularly perform the physical labor involved in their work as warehousemen, it was entirely consistent with the ALJ's RFC assessment. The ALJ rejected only the implication that Mullaly had additional limitations due to lack of balance or dizziness that caused him to fall frequently.

The ALJ cited the reports of Mullaly's daily activities, which did not suggest that typical household chores and activities excluding heavy physical labor were associated with dizziness or loss of balance. The ALJ could reasonably conclude that any implication in Ruckdashel's testimony that Mullaly had balance or dizziness problems in addition to his exertional limitations was inconsistent with the record as a whole.

Shaw provided a written statement dated February 18, 2005. She met Mullaly and helped him get his job as a warehouseman in November 2002. They became roommates in October 2003. The physical demands of Mullaly's warehouse work exacerbated his back problems and left him unable to do that work. She does not think Mullaly can sit for the prolonged periods she believes sedentary work requires. When they go on walks, Mullaly needs to stop and rest. She said that

Mullaly had a stroke in July 2004 and has not been able to concentrate, retain information or comprehend properly since that time. Tr. 144.

The ALJ gave no weight to Shaw's written statement. He found it lacked credibility because there is no evidence in the medical record suggesting that Mullaly ever suffered a stroke. In addition, Shaw did not cite personal observations to support her claim that Mullaly has difficulty sitting for normal work periods. The ALJ also pointed out that during some portions of the relevant period, Mullaly demonstrated the ability to sit for prolonged periods by working as a cab driver. Tr. 25.

In conclusion, the ALJ did not arbitrarily disregard the lay witness statements. His reasons for discounting them are germane and supported by a substantial evidence. He properly weighed the statements in context with a reasonable interpretation of the record as a whole. Accordingly, his evaluation of the lay witness statements should not be disturbed. *Dodrill v. Shalala,* 12 F.3d at 918; *Bayliss v. Barnhart*, 427 F.3d at 1218; *Nguyen v. Chater*, 100 F.3d at 1467.

## CONCLUSION

The burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d at 182. This requires the claimant to show that he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The record as a whole supports the ALJ's conclusion that Mullaly retains the RFC to perform the occupation of computer programmer as it is generally performed in the national economy. This is sufficient to uphold the ALJ's decision. 20 C.F.R. §§ 404.1560(b), 416.960(b); SSR 82-61.

## **RECOMMENDATION**

Based on the foregoing, the Commissioner's determination that Mullaly does not suffer from a disability and is not entitled to an award under Title II or Title XVI of the Social Security Act should be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due on June 5, 2007. If objections are filed, any responses to the objections are due 14 days after the objections are filed*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this \_\_\_\_21\_\_\_\_\_ day of May, 2007.

_____/s/_____

UNITED STATES MAGISTRATE JUDGE

14 - REPORT AND RECOMMENDATION